UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR PATLAN-GOMEZ, | No. 1:25-cv-02072-DC-EFB (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER |
| MINGA WOFFORD, et al., | |
| Respondents. | (Doc. No. 7) |

This matter is before the court on Petitioner Cesar Patlan-Gomez's motion for a temporary restraining order (Doc. No. 7), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order and order his immediate release.

**BACKGROUND**

**A.      Factual Background**

Petitioner Cesar Patlan-Gomez is a citizen of Mexico who most recently entered the United States on November 30, 2023. (Doc. No. 1 at ¶¶ 32–33.) Petitioner presented himself to immigration authorities seeking asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at ¶¶ 33–34.) An officer with the U.S. Department of Homeland Security ("DHS") determined that Petitioner had a credible fear of return to Mexico and placed

1

Petitioner in withholding only proceedings. (*Id*. at ¶ 34.) Petitioner was, however, subject to a final order of removal previously executed against him in 2011, which the government reinstated upon his reentry pursuant to 8 U.S.C. 1231(a)(5).[1] (Doc. Nos. 11-1 at ¶ 6; 11-2 at 6.) Thus, while his withholding only claims proceeded, Petitioner remained in immigration detention pursuant to 8 U.S.C. § 1231(a). Under that statute, a noncitizen is subject to mandatory detention in the ninety days following the finalization of a removal order (the "removal period"), and certain categories of noncitizens are subject to discretionary detention beyond the removal period. 8 U.S.C. § 1231(a)(2)(A), (a)(6).

On August 5, 2024, an immigration judge released Petitioner on bond pursuant to 8 U.S.C. § 1226. (Doc. Nos. 1 at ¶ 34; 11-4.) In his order granting Petitioner's release, the immigration judge noted that Petitioner was "subject to mandatory detention in Withholding Only proceedings under INA [Immigration and Nationality Act] 241(a) [codified at 8 U.S.C. § 1231(a)] on a Reinstatement Order under INA 241(a)(5) [codified at 8 U.S.C. § 1231(a)(5)]," but was entitled to a bond hearing pursuant to the court's order in *Gonzalez v. Sessions*, 325 F.R.D. 616, 629 (N.D. Cal. 2018), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).[2] (Doc. No. 11-4 at 1.) Petitioner was placed on an Order of Supervision upon his release. (Doc. No. 11-4 at 1.) Respondents allege that Petitioner has violated certain conditions of his Order of Supervision. (Doc. Nos. 11 at 2; 11-3 at 9.)

On July 30, 2025, Petitioner was re-detained at his scheduled ICE check-in appointment at the ICE office in Bakersfield, California. (Doc. No. 1 at ¶¶ 34–35.) Petitioner has been detained at the Mesa Verde ICE Processing Center since that date. (*Id.* at ¶ 36.) Petitioner has not been

[1] Under 8 U.S.C. § 1231(a)(5), when the government "finds that an alien has reentereed the United States illegally after having been removed" pursuant to an order of removal, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). While this reinstated removal order is deemed final, "[i]t does not, however, preclude [the] alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Johnson v. Guzman Chavez*, 594 U.S. 523, 530 (2021) (citing 8 U.S.C. § 1231(b)(3)(A)).

[2] Neither party disputes the validity of Petitioner's initial release.

2

provided a pre- or post-deprivation bond hearing, and has been informed that under current practices, he is not eligible to seek release on bond from an immigration judge. (*Id.* at ¶ 40.) Petitioner has no criminal convictions, has been issued valid employment authorization, and is actively involved in his community. (*Id.* at ¶ 38.)

During his current detention, an immigration judge denied Petitioner's withholding claim. (Doc. No. 11-2 at 8–9.) Petitioner appealed this order to the Board of Immigration Appeals, and that appeal remains pending. (Doc. No. 11 at 1.)

**B.    Procedural Background**

On December 30, 2025, Petitioner filed his habeas petition asserting the following claims against Respondents Orestes Cruz, Kristi Noem, Pamela Bondi, Minga Wofford, DHS, and Executive Office for Immigration Review: (1) violation of the INA relating to Petitioner's re-detention; (2) violation of Petitioner's right to substantive due process relating to Petitioner's detention without a bond hearing; (3) violation of Petitioner's right to procedural due process relating to Petitioner's re-detention without a pre-deprivation bond hearing; and (4) violation of the Administrative Procedure Act relating to ICE's alleged policy of detaining all noncitizens present in the United States without determining whether they are a flight risk or danger. (Doc. No. 1 at 12–17.) In his petition, Petitioner seeks an order requiring that Respondents either release Petitioner or provide him with a substantive bond hearing and awarding Petitioner attorneys' fees and costs under the Equal Access to Justice Act. (*Id.* at 17–18.)

On February 6, 2026, Petitioner filed the pending motion for a temporary restraining order in which he argues that his continued detention without a bond hearing violates his Constitutional right to due process. (Doc. No. 7.) Petitioner seeks an order requiring his immediate release, and enjoining Respondents from re-detaining Petitioner absent a pre-deprivation hearing before a neutral arbiter at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. (Doc. No. 7-1 at 11–12.)

On February 11, 2026, Respondents filed their opposition in which they argue that, because Petitioner is subject to a reinstated removal order, he is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(2)(A). (Doc. No. 11 at 3.) Respondents further argue that

3

Petitioner's detention is not unconstitutional because it has not exceeded the six-month period that the Supreme Court deemed presumptively reasonable in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

On February 12, 2026, Petitioner filed his reply in which he argues that Respondents failed to substantively address his constitutional argument. (Doc. No. 12 at 2–3.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

4

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

Petitioner argues that his "ongoing detention violates his procedural due process rights because his [Order of Supervision] was revoked without any notice or any opportunity to contest his detention before a neutral arbiter." (Doc. No. 7-1 at 5.) Petitioner adds that "he has never absconded from immigration authorities" and "has been engaging with the legal procedures laid out in the immigration law for those who cannot be removed to their country" therefore his "re-detention serves no non-punitive purpose." (*Id.* at 6.)

In their opposition, Respondents argue that because Petitioner is subject to a final removal order, and because his detention has exceeded the three-month removal period, he is subject to discretionary detention pursuant to 8 U.S.C. § 1231(a)(6). (Doc. No. 11 at 3.) Respondents further argue that, because it has been less than six months since Petitioner's removal period expired, Petitioner's continued detention is presumptively reasonable under *Zadvydas*. (*Id.*)

Respondents' argument ignores, however, that Petitioner was initially released from detention when he was subject to this same order of removal, and the statutory basis for his detention remains the same today as it was upon his initial release. (Doc. No. 11-4.) Thus, an immigration judge determined in August 2024 that Petitioner was not a flight risk or danger to community safety such that Petitioner should be released pending finalization of his withholding only proceedings. (*Id.*) The controlling question, therefore, is not whether Petitioner's detention is authorized under section 1231(a), but whether Petitioner's initial release created "'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (E.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

The court finds *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) persuasive as to this question. In *Guillermo M.R.*, the petitioner was subject to a final removal order due to a criminal conviction, but he was placed in withholding only proceedings after he asserted a fear of removal to his home country. *Guillermo M.R.*, 791 F. Supp. 3d at 1027. While Petitioner's withholding claim was pending, an immigration judge released Petitioner on bond

5

and an order of supervision. *Id.* Approximately two years later, ICE informed Petitioner that he would be re-detained at his next ICE check-in because of his recent arrest for robbery and vandalism, for which charges were not brought. *Id.* at 1028. The petitioner filed a habeas petition and motion for a preliminary injunction, arguing that his "re-detention without a hearing before a neutral decisionmaker would violate his rights to substantive and procedural due process." *Id.*

The court in *Guillermo M.R.* found that the "[p]etitioner has a liberty interest in his continued release on bond" because the petitioner "was granted release by a neutral third-party [immigration judge] after a hearing, and has been free on bond for more than two years." *Id.* at 1030. The court employed the three-factor test established in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to determine that Petitioner was entitled to an injunction enjoining the government from "re-detaining Petitioner without notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether Petitioner's re-detention is warranted based on flight risk or a danger to the community." *Id.* at 1038.

Here, as in *Guillermo M.R.*, Petitioner was released by a neutral arbiter who determined that Petitioner was neither a flight risk nor a danger to the community. Here, as in *Guillermo M.R.*, Petitioner enjoyed freedom in the United States for an extended period pursuant to that release before he was re-detained without notice or an opportunity to argue for his continued freedom. Here, as in *Guillermo M.R.*, Petitioner maintains a liberty interest in his continued freedom. *Id.* at 1029 ("[I]ndividuals conditionally released from detention have a protected interest in their 'continued liberty.'") (citing *Young v. Harper*, 520 U.S. 143, 147 (1997)).

/////
/////
/////
/////
/////
/////
/////
/////

6

Accordingly, the court will employ the *Mathews* analysis[3] to determine what process Petitioner is due before he may be re-detained.

The *Mathews* analysis "generally requires consideration of three distinct factors" to determine the specific dictates of due process. *Rodriguez*, 53 F.4th at 1207 (citing *Mathews*, 424 U.S. at 334–35. Those factors are:

> *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id. First*, Petitioner has a substantial private interest in being provided with a procedure by which he can argue for his continued release pending his withholding claim. Respondents argue that Petitioner's private interest in his liberty is mitigated because he elected to appeal the immigration judge's order denying his claim, thus "while decisions to prolong one's own detention may be difficult, 'the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow,' and 'even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.'" (Doc. No. 11 at 5) (quoting *Demore v. Kim*, 538 U.S. 510, 530 n.14 (2002)). Petitioner's constitutional claim, however, is not predicated upon the duration of his detention pending his appeal; it is predicated upon his re-detention following release without notice and an opportunity to argue for his

---

[3] Respondents argue that the *Mathews* analysis is inapplicable here because "[a]cross numerous cases involving the [Immigration and Nationality Act], the Supreme Court has not adopted a multi-factor balancing test for constitutional due process challenges to civil detention in removal proceedings." (Doc. No. 11 at 4.) The Ninth Circuit, however, has explicitly approved of the *Mathews* analysis in the context of immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (stating that the *Mathews* analysis is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context"). Respondents assert that the court should not employ the *Mathews* analysis, in part because the *Rodriguez Diaz* court stated that "the [Supreme] Court has recently backed away from multi-factorial 'grand unified theor[ies]' for resolving legal issues." (Doc. No. 11 at 4) (quoting *Rodriguez Diaz*, 53 F.4th at 1214.) The court notes with concern that Respondents fail to indicate that this quote was taken from the concurring opinion, not the majority opinion where the Ninth Circuit dismissed the same argument raised by the government as to the applicability of *Mathews* that Respondents raise here. *See Rodriguez Diaz*, 53 F.4th at 1206.

7

continued liberty. Accordingly, Petitioner's private interest in his liberty is high, and the first *Mathews* factor weighs heavily in Petitioner's favor.

*Second,* the risk of an erroneous deprivation of Petitioner's liberty interest is also high. Civil immigration detention is "nonpunitive in purpose and effect," and is not justified where a petitioner is not a flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690. A neutral third party has already determined that Petitioner is not a flight risk and is not a danger to his community. (Doc. No. 11-4.) While Respondents note that Petitioner allegedly violated several of the conditions of his Order on Supervision while released (Doc. No. 11-3 at 9), the question as to whether those violations now render Petitioner a flight risk or danger to his community are properly directed to a neutral arbiter. *See Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sep. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."). Accordingly, the risk of the erroneous deprivation of Petitioner's liberty interest is high, and the second *Mathews* factor weighs heavily in Petitioner's favor.

*Third*, the government's interest in continuing Petitioner's detention without a bond hearing is low. Respondents argue that because "the government clearly has a strong interest in preventing aliens from remaining in the United States in violation of our law," Petitioner's continued detention is warranted. (Doc. No. 11 at 6) (quoting *Rodriguez Diaz*, 53 F.4th at 1208). Specifically, Respondents argue that "through detention, the government [] seeks to increase the chance that, if ordered removed, the aliens will be successfully removed." (*Id.*)

This interest is substantially mitigated, however, as a third party has *already determined* that Petitioner does not present a substantial likelihood of fleeing while his withholding only proceedings are pending. (Doc. No. 11-4.) Further, this order does not prevent Respondents from detaining Petitioner while his proceedings continue, it merely requires that they hold a bond hearing before doing so, which is a routine proceeding that imposes a "minimal" cost on the government. *Doe. v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Accordingly, the government's interest in continuing Petitioner's detention without a bond hearing is low, and the

8

third factor weighs in Petitioner's favor.

Thus, all three *Mathews* factors weigh in Petitioner's favor, and Petitioner has established a likelihood of success on the merits of his claim that due process requires Respondents to provide him with a pre-deprivation bond hearing before he may be re-detained.

**B.    Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.    Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering irreparable harm as a result.

9

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata*, 2025 WL 2741654, at *13 (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (E.D. Cal. Sep. 12, 2025)). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.     Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).

Here, Petitioner requests that no bond be required. (Doc. No. 7-1 at 11.) Respondents do not address Petitioner's request. The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

/////

10

**CONCLUSION**

For the reasons explained above,

1.      Petitioner Cesar Patlan-Gomez's motion for a temporary restraining order (Doc. No. 7) is GRANTED as follows:

      a.      Petitioner Cesar Patlan-Gomez shall be released immediately from the Respondents' custody. Respondents shall not impose any additional restriction on him unless it is determined to be necessary at a future pre-deprivation/custody hearing;

      b.      If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's detention by clear and convincing evidence;[4] and

2.      Respondents are ORDERED TO SHOW CAUSE by no later than March 12, 2026, as to why this court should not issue a preliminary injunction on the same terms as this order. Petitioner may file a response by no later than March 16, 2026. Respondents may file a reply to Petitioner's response by no later than March 17, 2026.

IT IS SO ORDERED.

Dated:   **March 6, 2026**    _____
Dena Coggins
United States District Judge

---

[4] Numerous courts within this district have found that where a bond hearing is constitutionally required, the burden is properly shifted to the government. *See, e.g., Mohammed v. Warden*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 at *5 (E.D. Cal. Jan. 26, 2026); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13-*14 (E.D. Cal. Aug. 28, 2025).